**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NOVASHAWN BANNISTER,

                                        Plaintiff,

                v.

OFFICER CHRISTOPHER PERILLI;
OFFICER BRANDON KOMMER; OFFICER
JACOB KEARNES,

                                        Defendants.

No. 1:24-CV-00183
(ECC/PJE)

**APPEARANCES:**

Novashawn Bannister
Warren County Correctional Facility
1400 State Route 9
Lake George, New York 12845
Plaintiff pro se

**PAUL J. EVANGELISTA**
**U.S. Magistrate Judge**

## REPORT-RECOMMENDATION & ORDER

### I. **Background**

        Plaintiff commenced this action on February 6, 2024, with the filing of a complaint

and application for leave to proceed in forma pauperis.  *See* Dkt. No. 1 ("Compl.), Dkt.

Nos. 2-3.  On October 4, 2024, Magistrate Judge Christian F. Hummel granted plaintiff's

IFP application.  *See* Dkt. No. 10.  Judge Hummel identified the following claims as

being raised in plaintiff's original complaint: (1) Fourth Amendment unreasonable search

and seizure, (2) False Arrest, (3) Fourteenth Amendment Due Process, (4) Deliberate

Indifference (failure to protect/intervene), and (5) Fourteenth Amendment Equal

Protection.  *See* Dkt. No. 10.  Judge Hummel further recommended that (1) plaintiff's official capacity claims against all defendants be dismissed with prejudice, (2) plaintiff's Eighth Amendment claims be deemed as if brought under the Fourth Amendment and that such claims be dismissed without prejudice for failure to establish defendants' personal involvement, and (3) the remainder of plaintiff's complaint be dismissed without prejudice and with opportunity to amend only in the event plaintiff can demonstrate favorable termination pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). Judge Hummel both advised and recommended that plaintiff be instructed that any amended complaint is required to be a complete pleading that supersedes his original complaint in all respects and cannot incorporate by reference any portion of his original complaint or replead any claims or parties dismissed by the Court with prejudice and that he must fully comply with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure.  *See id.*

On October 26, 2024, plaintiff filed an amended complaint.  *See* Dkt. No. 12.  On November 5, 2024, U.S. District Judge Anne M. Nardacci "terminated as moot" the October 4, 2024, Report-Recommendation & Order "given Plaintiff's filing of an Amended Complaint."  Dkt. No. 11.  As Judge Nardacci's November 5, 2024, Text Order, Dkt. No. 11, also terminated that portion of Judge Hummel's October 4, 2024, Report-Recommendation & Order granting plaintiff's IFP Application, pending before the undersigned for review is consideration of plaintiff's IFP Application as well as review of the amended complaint pursuant to 28 U.S.C. § 1915.   *See* Dkt. Nos. 12, 13.

## II. **In Forma Pauperis**

The undersigned has completed review of plaintiff's IFP Application and determines he is financially qualified to proceed IFP.[1]  *See* Dkt. Nos. 2-3.

### III.  **Review of Amended Complaint**

#### A. **Rule 8**

Despite the Report-Recommendation & Order advising plaintiff that (1) any amended complaint supersedes and replaces the original complaint in its entirety, (2) he cannot incorporate by reference any portion of the original complaint, (3) he must replead all facts and claims under which he seeks to proceed, (4) he must comply with Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 8 and 10, plaintiff's amended complaint fails to do so.  *See* Dkt. No. 10 at 17-18, 18 n.11.

Plaintiff's amended complaint does not provide the date of the underlying incident, the location of the alleged traffic stop, or provide all of the facts included in the original complaint.  *See* Dkt. No. 12.[2]  He does not include a caption.  *See id.*  He does not state the relief sought.  *See id.*  Thus, plaintiff's complaint does not comply with Rule 8's pleading standards.  However, in light of special solicitude and with conservation of judicial resources and efficiency in mind, the undersigned will incorporate by reference exclusively the incident date from the original complaint, which plaintiff indicated occurred on December 14, 2023.  *See* Dkt. No. 1 at 5.  As plaintiff was explicitly warned that he must replead all facts, claims, and defendants against which he wishes to proceed, that he could not incorporate the original complaint by reference, and that the amended complaint would supersede and replace the original complaint in its entirety,

---

[1]  Plaintiff is again advised that, despite the grant of IFP status, he is required to pay for all costs and fees associated with this matter, including, but not limited to, copying fees.
[2]  The undersigned's citations are to the pagination generated by the Court's electronic filing and case management system, located at the header of each page.

the undersigned declines to incorporate any further facts or any claims from the original complaint. *See* Dkt. No. 10 at 17-18; *see, e.g., Granger v. City of Watertown*, No. 8:20-CV-189 (MAD/CFH), 2020 WL 8771258, at *3 (N.D.N.Y. Dec. 17, 2020), *report and recommendation adopted*, No. 8:20-CV-189 (MAD/CFH), 2021 WL 485732 (N.D.N.Y. Feb. 10, 2021) ("To attempt to review with the incorporated portions of the original complaint together with the disjointed amended complaint would place too great a burden on the Court, and, if the matter proceeds past initial review, the defendants."). Beyond the incident date, the undersigned's review focuses solely on the sufficiency of the four corners of the amended complaint.

Plaintiff contends that on December 14, 2023, defendant Brandon Kommer ordered defendant Christopher Perilli[3] to pull over the car in which plaintiff was a passenger under the pretext that the car engaged in traffic violations – speeding and running a stop sign. *See* Dkt. No. 1 at 5; Dkt. No. 12 at 1. The traffic violations were "fabricated" to "detain & investigate anything." Dkt. No. 12 at 1. Plaintiff contends that defendants can offer no proof of such traffic violations; instead, the vehicle was targeted because there were people of color inside. *See id.* Plaintiff states that a traffic ticket "about a second stop sign that Perilli 'allegedly witnessed' while coming to stop us" was issued three to four months after the December 14, 2023, traffic stop because defendants "tried to cover their tracks & issue a new ticket to support probable cause." *Id.* at 1-2. Plaintiff contends that defendants "made up all these reasons & allegations

---

[3] At one point in the amended complaint plaintiff refers to "all 4 officers," and at another point states, "Kearns Jacob *& another officer* proceeded in pulling down my pants and underwear to get a view of my rectum & continue humiliating me." Dkt. No. 12 at 4. However, the amended complaint does not name officers involved beyond Jacob Kearns, Christopher Perilli, and Brandon Kommer, nor does he indicate that he seeks to proceed against any other defendants, Doe or otherwise. *See* Dkt. No. 12. It is reasonable to conclude that when plaintiff states "Kearns Jacob," he means to refer to Jacob Kearns. *Id.* at 4.

supported with no proof, just so the stop would be legal contact to them discovering a gun I allegedly obtained." *Id.* at 3.

Plaintiff also contends that he learned that defendants allege to have stopped the vehicle because they thought that there was someone in the vehicle with a warrant, but all of the people in the vehicle were wearing sunglasses, masks, or winter gear. *See* Dkt. No. 12 at 2. Liberally read, plaintiff appears to be claiming that because identification of the driver or passengers through the windows of a car would have been difficult or impossible, defendants could not have recognized someone in the car as an individual with a warrant, rendering this reasoning pretextual. *See id.* He further contends that the person with the warrant was someone who was already incarcerated at the time of the traffic stop. *See id.* Plaintiff also asserts that defendants offered another pretext for the stop – that people in the vehicle "could have been smoking illegal narcotics," but contends that this reason is false because plaintiff and others in the vehicle were not given sobriety tests. *Id.* at 2-3.

Plaintiff provides that defendant Perilli reached through the car window and "fondl[ed] my dick & balls which is violating my privacy." Dkt. No. 12 at 3. Perilli removed plaintiff from the vehicle "with my seatbelt shoulder strap on[,]" and "put his hand on my dick again & slid from my dick to my ass crack in a backward credit card swipe motion." *Id.* Perilli "claimed to felt (sic) the gun in between my buttcrack & yelled at me to unclench my ass apart (sic) for him to remove it but screamed 'unclench' & 'I'll get the dog on you' 'I'll tase you.'" *Id.* at 3. Plaintiff contends that there was no warrant "or information a gun was in my asscrack." *Id.* Plaintiff states that there was a "tip" from an Uber driver who told police she "thinks" plaintiff had a gun "based off my skin color

because thats (sic) all she know (sic) about me as a Uber Driver/Cab Driver," but that she did not know plaintiff's identity; the location of the gun; or, it appears, any reason to believe he had a gun. *Id.* at 3.

Plaintiff states that defendant Kommer arrived at some point thereafter, "pat frisked me, he claimed to be advised I had crack in my rectum so he then did the same swipe of my ass crack & fondled my dick & balls" and "said he felt a gun as well." Dkt. No. 12 at 4. Plaintiff contends that this occurred "right outside infront (sic) of on-lookers." *Id.* Plaintiff stated that "Kearns Jacob & another officer proceeded in pulling down my pants and underwear to get a view of my rectum & continue humiliating me." *Id.* Plaintiff pleaded with Perilli and Kearns "to stop touching my private parts," but Perilli responded, "We aint (sic) touch your dick YET[,]" "Nobody touched it Yet & tryna (sic) taunt me & humiliate me. Perilli states 'Yeah its (sic) cause he's Black." *Id.* at 4.

Plaintiff contends that defendant Kearns "also groped & fondled me the same way as others named already." Dkt. No. 12 at 4. Plaintiff provides that Kommer ordered Perilli to "get the sciccors (sic) & gloves & cut it out my underwear." *Id.* "All 4 officers stated they felt a gun but couldn't retrieve it[.]" *Id.* Plaintiff contends that it was "unsafe" to be "allegedly moving a gun around in my underwear that they couldnt (sic) see & had to open my buttcrack to remove it through my underwear" as the gun could have gone off and injured plaintiff, defendants, or a bystander." *Id.* Plaintiff contends that the search for the weapon occurred "with no warrant & it wasnt (sic) exigent circumstances, I was handcuffed & not a threat or resisting." *Id.* Plaintiff opines that defendants "could have brought me to a precint (sic) to strip me of my clothes & safely remove it without exposing my body parts in public" or an officer "could have got in the

backseat to secure my movements in handcuffs to prevent evidence being lost or triggering a gun[.]"  *Id.* at 4-5.  Plaintiff further opines that his "clothes couldve (sic) been cut open without any pants & underwear pulled down & exposed at 5pm in a residential neighborhood public street with multiple witnesses.  All unreasonable & unsafe actions." *Id.*

## B. **Official Capacity Claims**

As Judge Hummel indicated in the October 4, 2024, Report-Recommendation & Order, the Eleventh Amendment bars claims against government employees in their official capacities for money damages.  *See* Dkt. No. 10 at 16 (citing, *inter alia*, *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016)).[4] Although the amended complaint does not specify the capacities in which he seeks to sue defendants, to the extent plaintiff seeks to sue defendants in their official capacities for monetary damages, it is recommended that such claims be dismissed without prejudice.

## C. *Heck v. Humphrey* Concerns

In response to Judge Hummel's directive that plaintiff advise the Court as to the status of any criminal charges or conviction arising out of the underlying traffic stop, Dkt. No. 10, plaintiff provides the following:

> I just blew trial to the gun charge.  They recovered my DNA wasnt on it & that someone else (sic) DNA was, & it was in a plastic bag when retrieved my DNA wasnt on that neither.  The traffic ticket got dismissed 2 days before I started trial & a Cop that arrested me was at my juror selection telling everyone to find me guilty.  Officer Tanner, a C.O. was a juror &

---

[4]   The Court will provide plaintiff with copies of unpublished decisions cited within this Report-Recommendation & Order for the first time in this action.  However, the Court will not provide plaintiff with copies of cases that he received when the Court provided him with the October 10, 2024, Report-Recommendation & Order.

> they told me they witnessed him tainting the Jurors so they came & told
> me the next day.

Dkt. No. 12 at 7 ¶8.  Plaintiff's amended complaint has not demonstrated favorable

termination of the criminal[5] charges/conviction pursuant to *Heck*.

In his amended complaint, plaintiff fails to identify any statutes or specific rights

he claims defendants to have violated.  However, applying special solicitude, it appears

plaintiff is contending that (1) the traffic stop and detention were unreasonable in

violation of the Fourth Amendment as they were not based on reasonable suspicion;

(2) the warrantless search of his person, strip search, and/or visual/manual body cavity

searches were unreasonable in violation of the Fourth Amendment; (3) defendants

intended to humiliate plaintiff by taunting him and stripping him in view of the public,

amounting to excessive force in violation of the Fourth Amendment; and

(4) the traffic stop was a violation of his Fourteenth Amendment rights to equal

protection of the laws because he was racially profiled.  *See* Dkt. No. 12.

Plaintiff argues that there existed no exigent circumstances for defendants to

perform the strip search/body cavity search of him at that moment because he was

handcuffed and, thus, not a risk.  *See* Dkt. No. 12 at 4-5.  He argues that and if

defendants reasonably believed that plaintiff could access the weapon they thought was

concealed on his person while handcuffed, they could have placed an officer with him in

the back seat.  *See id.*

In recommending the dismissal of plaintiff's Fourth Amendment unreasonable

search and seizure and false arrest claims, Fourteenth Amendment due process claims,

deliberate indifference (failure of other officers to protect or intervene) claims, and

---

[5]  Plaintiff indicates that the vehicle and traffic violations were dismissed.  *See* Dkt. No. 12 at 5.

Fourteenth Amendment equal protection claims as plead in the original complaint, Judge Hummel indicated that such claims should be repleaded "ONLY in the event that plaintiff can demonstrate favorable termination pursuant to *Heck v. Humphrey*[.]"  Dkt. No. 10 at 17.  In reviewing the original complaint, Judge Hummel recognized that, should this Court reach these issues and agree with plaintiff that the stop or resultant searches were violative of his Fourth Amendment rights or his right to equal protection under the Fourteenth Amendment, they would necessarily "demonstrate the invalidity of confinement or its duration."  *Id.* (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82-82 (2005)).  Judge Hummel recommended plaintiff be permitted amendment of his excessive force claims due to failure to demonstrate personal involvement.  *See* Dkt. No. 10,

      Here, plaintiff has failed to demonstrate favorable termination of the gun charges/conviction.  His amended complaint suggests that he was convicted.  *See* Dkt. No. 12 ("I just blew trial to the gun charge.").  Plaintiff's claims surrounding unreasonable search and seizure, false arrest, and that the stop was a violation of his right to equal protection are "precisely the sort of claims that are contemplated by Heck, as they would imply the validity of his conviction. 'Claims for . . . false arrest . . . call into question the validity of a conviction, because false arrest requires a lack of probable cause and malicious prosecution requires probable cause and a termination of the proceedings in the [inmate's] favor.'"  *Zografidis v. Richards*, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), *report and recommendation adopted* (Oct. 7, 2022), *aff'd*, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)); Dkt. No. 10 at 10.

Accordingly, as plaintiff fails to demonstrate favorable termination of the gun charges/conviction arising out of the traffic stop, his (1) Fourth Amendment claims for: (a) false arrest, (b) unreasonable searches, and (2) racial profiling claims pursuant to the Fourteenth Amendment's Equal Protection clause must be dismissed without prejudice and without opportunity to amend because plaintiff has not demonstrated favorable termination pursuant to *Heck*.

### D. **Excessive Force**[6]

In reviewing the original complaint, Judge Hummel cited case law demonstrating that there may exist claims for excessive force under the Fourth Amendment during a strip or visual/manual body cavity search if the officer conducted such search for purposes of humiliation. *See* Dkt. No. 10 at 14.  Plaintiff has repleaded some of his excessive force claims relating to the searches.  *See* Dkt. No. 12; *see supra* n.6.  Thus, the undersigned must now assess whether plaintiff can proceed with claims reviewing

---

[6] Plaintiff's amended complaint has abandoned some of his excessive force claims.  In the original complaint, plaintiff alleged that he was "excessively snatched . . . out of the car while my seatbelt still on," and defendants "aggressively held my wrist at painful angles & then threw me against the car," "slammed my head against the car," resulting in "injuries done by cuffs & excessive rough movement, severe nerve damage from wrist to tip of my thumb on my right hand."  Dkt. No. 1 at 5, 10.  Plaintiff does not replead such facts in the amended complaint.  The only statement plaintiff makes in the amended complaint is that Perilli "took me out (sic) the car with my seatbelt shoulder strap still on," but he does not claim he suffered pain or any injury as a result.  Thus, this does not suffice to state a claim for excessive force. Plaintiff was advised that the amended complaint supersedes and replaces the original complaint in its entirety, and that he must replead all facts and claims with which he wishes to proceed.  Plaintiff has also failed to reallege claims relating to failure to intervene.  *See* Dkt. No. 12; Dkt. No. 10 at 12.  In the original complaint, plaintiff mentioned, conclusorily, that his due process rights were violated, but "d[id] not detail how he contends his procedural and substantive due process rights were violated."  Dkt. No. 10 at 12 n.7. Plaintiff makes no due process claims in the amended complaint.  *See* Dkt. No. 12.  Plaintiff did not replead any of these claims, despite being given leave to do so and being warned of the requirements of properly pleading an amended complaint.  Thus, these claims – Fourth Amendment excessive force relating to the alleged physical force ("excessively snatch[ing]," bending wrists, slamming head on car), deliberate indifference (failure to intervene/protect), and Fourteenth Amendment due process violations – are abandoned.  *See generally, e.g., Wenchun Zheng v. Gen. Elec. Co.*, No. 1:15-CV-1232 (TJM/CFH), 2016 WL 10859373, at *8 n.11 (N.D.N.Y. Jan. 12, 2016), *report and recommendation adopted sub nom. Zheng v. Gen. Elec. Co.*, 2016 WL 447496 (N.D.N.Y. Feb. 4, 2016) (holding where pro se plaintiff did not replead claims in amended complaint, such claims were deemed abandoned) (citing *Dluhous v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998) (additional citation omitted)).

the reasonableness of the "force" used during the searches of plaintiff's person without implicating *Heck* concerns.[7]

When evaluating an excessive force claim under the Fourth Amendment, "courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Courts are to measure the reasonableness of the use of force by considering "the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Id.* (quoting *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999)).

Here, plaintiff concedes that defendants advised that they were searching him for a weapon or drugs, but he contends that defendants intentionally humiliated and taunted him during the search, telling him that they were going to touch his "private parts" and were doing so "cause he's Black." Dkt. No. 12 at 4. He also alleges that defendants Kommer and Perilli pulled down his pants and underwear on a public street, in front of onlookers, to humiliate him, and not, in his opinion, due to any exigent circumstances. *See id.* at 4-5.

As this District has recognized, "caselaw analyzing such searches of suspects who are only detained—as opposed to arrested or incarcerated—is sparse." *Towns v.*

---

[7]  Plaintiff's amended complaint refers to several distinct searches: a strip frisk above his clothes; a visual search of plaintiff's body without his clothes, which may be a visual body cavity search; and a removal of a weapon from his person, arguably a manual body cavity search. It appears that when plaintiff was in the vehicle and alleges that defendant Perilli reached into search his private parts, he was detained and not arrested.  See Dkt. No. 12. Although plaintiff mentions that he was handcuffed, it is not clear at what point he was handcuffed or whether he was arrested during the various searches once he was removed from the vehicle or at some point thereafter. *See* Dkt. No. 12 at 4.

*Stannard*, 431 F. Supp. 3d 44, 63-64 (N.D.N.Y. 2019).  However, as Judge Hummel

cited in the October 4, 2024, Report-Recommendation & Order, there exists some case

law in district courts within this Circuit recognizing that a search may violate the Fourth

Amendment if the purpose behind the search was humiliation.  *See* Dkt. No. 10 at 14

(citing *Tisdale v. Hartley*, 442 F. Supp. 3d 569, 575-76 (W.D.N.Y. 2020); *Granger v.*

*Santiago*, No. 3:19-CV-60(MPS), 2019 WL 1644237, at *7 (D. Conn. Apr. 16, 2019)

("permitting excessive force claim to proceed where the defendant 'conducted the

manual body cavity search for the purpose of humiliating [the defendant] rather than for

a legitimate penological purpose'")).[8]  Although plaintiff makes no explicit claims that

defendants engaged in any of the searches out of sexual gratification, his amended

complaint does describe one defendant's search as "fondl[ing] my dick & balls."  Dkt.

No. 12 at 4 ¶¶4-5. His amended complaint also plainly argues that defendants made

comments aimed to humiliate him and searched him in a manner that exposed his

genitals to the public, in a manner plaintiff suggests was unnecessary.  *See id.* at 3-4

("We aint touch your dick Yet[,]" "Nobody touched it YET," "yeah its cause he's black,"

"I'll get the dog on you," "I'll tase you.").

Plaintiff's amended complaint is internally conflicting in that, at points, he appears

to dispute whether defendants recovered a gun following the search, but he also

appears to concede certain facts that at least acknowledge that defendants received a

tip or had some kind of information about a weapon in his possession and/or drugs

hidden on his person.  Dkt. No. 12 at 4.  Indeed, plaintiff contends that defendants had

"no reason to be maneuvering my dick, balls, & ass crack area with his hands & no

---

[8]  The undersigned acknowledges that this case arises in the prison context, and may not apply equally
to a detained but not incarcerated search.

warrant or information a gun was in my asscrack." *Id.* at 3.  He further asserts that there existed no exigent circumstances requiring defendants to search him at that moment, on a public street rather than at the precinct.  He further asserts that he was not resisting.  *See id.*  Yet, he also contends that defendants claimed that they felt a gun, told him that they were advised that he "had crack in my rectum," and that they were stating he was clenching.  *See id.* at 4.  Plaintiff also concedes that defendants told him they were searching for a weapon, and they told him they believed plaintiff had a gun "between my buttcrack."  *Id.* at 12 at 3.  He also acknowledges that defendants got out gloves and scissors to "cut it [a gun] out of my underwear." *Id.* at 4.  Thus, at times, plaintiff's facts suggest that he concedes that defendants were searching for a gun and found one.  Indeed, plaintiff claims that it was not "safe" for defendants to be "mov[ing] a weapon for multiple minutes by multiple hands & try to retrieve it.  As well as my clothes couldve (sic) been cut open without any pants and underwear pulled down & exposed[.]" *Id.*

Here, it is clear that the purpose of the searches is disputed.  Plaintiff appears to contend that the purpose was to humiliate plaintiff and suggests that defendants' position would be that there existed a legitimate purpose – a belief that plaintiff had drugs and/or a weapon secreted on his body and that there were exigent circumstances.  Assessing whether the strip frisk, visual, or manual body cavity searches, or exposure of plaintiff's genitals in public was "necessary" under an excessive force analysis, would require an analysis into the reasonableness of the search(es) and a resolution of factual disputes directly implicating the underlying criminal matters, which is prohibited under *Heck*.

In other words, if this Court were to conclude that the "force" – here, the type and nature of searches performed on plaintiff – was excessive under the Fourth Amendment, such an analysis would require the Court to assess whether the officers' conduct was "objectively reasonable in light of the facts and circumstances . . . without regard to their underlying intent or motivation." *Tisdale*, 442 F. Supp. 3d at 575-76 (quoting *Mickle,* 297 F.3d 114, 120 (2d Cir. 2002). Were this Court to conclude that the searches were unreasonable, it would need to consider whether exigent circumstances existed, what information defendants were aware of when performing the search, and similar matters. Thus, the excessive force reasonable analysis, including the assessment of the purpose of the searches, is one that inextricably enmeshed with plaintiff's underlying criminal conviction for gun charges. This Court's conclusion would necessarily involve calling into question the reasonableness of the searches and call his conviction into question,[9] implicating *Heck*.

Accordingly, given these limited and specific factual circumstances, where it does not appear possible to separate claims of excessive force from claims of the reasonableness of the search(es), it is recommended that such claims be dismissed without prejudice but without leave to amend pursuant to *Heck*.

### E. **State Law Claim**

Arguably, plaintiff seeks to raise a state law claim for intentional infliction of emotional distress. *See generally* Dkt. No. 12. Plaintiff claims that defendants publicly humiliated him by searching him in public, in view of bystanders, and made racial

---

[9]  "Indeed, whether a search incident to an arrest was lawful turns upon whether such search was reasonable." *Kirby v. Abraham*, No. 5:24-CV-0522 (BKS/TWD), 2024 WL 4906112, at *5 (N.D.N.Y. Oct. 25, 2024), *report and recommendation adopted*, No. 5:24-CV-522 (BKS/TWD), 2024 WL 4905131 (N.D.N.Y. Nov. 27, 2024) (citing *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995)).

remarks, arguably seek to state a claim for intentional infliction of emotional distress ("IIED") under state law. *See Mejia v. City of New York*, 119 F. Supp. 2d 232, 286 (E.D.N.Y. 2000) ("Several courts have held that a police officer's use of ethnic slurs, when coupled with use of excessive force, is sufficient to state an IIED claim.").

Firstly, as the undersigned recommends dismissal of all federal claims, it is recommended that this Court decline to exercise supplemental jurisdiction over this potential state law claim. *See* 28 U.S.C. § 1367(c) (stating that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction"); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir. 2006) (holding that a district court has discretion to decline to exercise supplemental jurisdiction over state law claims where all claims over which the federal court has original jurisdiction have been dismissed).

Secondly, even if this Court were to review such a claim, the statute of limitations is one year, and plaintiff commenced this action on February 6, 2024, more than one year after the December 14, 2023, incident, when the statute of limitations began to run. *See* N.Y. C.P.L.R. § 215(3); *Mejia v. City of New York*, 119 F. Supp. 2d 232, 287 (E.D.N.Y. 2000). Lastly, in addition to being barred by the statute of limitations, as an IIED claim is premised on a conclusion that the underlying search was unlawful, such a claim would not be able to proceed in this Court unless and until plaintiff can demonstrate favorable termination under *Heck*.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's in forma pauperis application, Dkt. No. 2, is **GRANTED**; and it is

**RECOMMENDED**, that: (1) plaintiff's claims against defendants in their official capacities for monetary damages be **DISMISSED** without prejudice and without opportunity to amend for lack of subject matter jurisdiction, Dkt. No. 12; (2) all of plaintiff's federal claims in his amended complaint, *id.*, be **DISMISSED** in their entirety without prejudice and without leave to amend in this action, pursuant to *Heck v. Humphrey*, *see id.*; and (3) the Court decline to exercise supplemental jurisdiction over plaintiff's potential state law claim, *see id.*, and **DISMISSED** such claim without prejudice and without leave to amend; and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[10]

---

[10] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal federal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal federal holiday.  *See id.* § 6(a)(1)(c).

Dated: May 1, 2025
        Albany, New York

_____

Paul J. Evangelista
U.S. Magistrate Judge